| | |
|---|---|
| GAIL A. GRIFFIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:24-cv-00248-TRM-MJD |
| | ) |
| MILLENNIA HOUSING | ) JURY DEMANDED |
| MANAGEMENT, LTD. | ) |
| and MILLENNIA HOUSING | ) |
| DEVELOPMENT, LTD., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff's opposition is uncompelling. It relies on unsupported assertions, speculation, mischaracterizations of fact, and is otherwise unsupported by any credible record evidence to withstand summary judgment. Because Plaintiff has not and cannot create a disputed issue of any material fact,[1] Defendant's Motion for Summary Judgment must be granted.

**I.     Plaintiff Fails to Show Direct Evidence.**

Plaintiff relies heavily on the assertion that she can establish her claim through direct evidence. Yet, she cannot satisfy this standard. Direct evidence is "smoking gun" evidence that explains itself. *Pelcha v. MW Bancorp, Inc.*, 455 F. Supp. 3d 481 (S.D. Ohio 2020), aff'd, 984 F.3d 1199 (6th Cir. 2021), opinion amended and superseded, 988 F.3d 318 (6th Cir. 2021), and aff'd, 988 F.3d 318 (6th Cir. 2021). The United States Court of Appeals for the Sixth Circuit

---

[1] Plaintiff's facts frequently lack citation to the record. As such, these facts should be disregarded pursuant to Fed. R. Civ. P. 56(c)(1).

1

defines direct evidence as, "evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.,* 360 F.3d 544, 548 (6th Cir. 2004). The most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, satisfy the criteria for direct evidence. *Sanders v. Lincoln Cnty., Tennessee*, 231 F. Supp. 3d 290 (E.D. Tenn. 2017). Plaintiff has not and cannot meet this burden and thus summary judgment is warranted.

### A. Frank Sinito Did Not Discriminate Based On Plaintiff's Age.

Plaintiff grossly mischaracterizes the comments made by Chief Executive Officer, Frank Sinito. Any remark by Sinito about the "younger generation" clearly referred to his children, not Plaintiff. Plaintiff herself acknowledged this context, recalling that shortly after she began as Property Manager, Sinito brought his son and a friend to the Overlook. (Plf. Dep. 56:24, JA_2). Plaintiff further testified that Sinito's son Tommy was only a teenager at the time, yet Sinito was already discussing "bringing Tommy into the fold." (Plf. Dep. 57:6-11, JA_2). Thus, any references to the ages of Sinito's children are irrelevant, as he had long intended for them to be involved in the business—plans that predated Plaintiff's employment.

Secondly, Plaintiff vaguely alleges that Sinito's comments occurred "in 2022 and 2023." Importantly, these remarks were not made in temporal proximity to her termination and therefore cannot constitute direct evidence of discrimination. To the contrary, the record shows that any such comments actually predated or coincided with Plaintiff's promotion, not her termination. Plaintiff claims that beginning in 2021 she experienced an increase in age-related remarks, yet in September 2021 she was promoted to Regional Property Director. This promotion undermines any suggestion that Sinito or other members of management were discriminating against her. Plaintiff was approximately 58 years old when hired—already within the protected class—and 65 at the time of

2

termination. It is implausible to suggest that management hired her, promoted her multiple times, and then suddenly developed animus toward her age. At a minimum, these facts require an inferential step, which defeats Plaintiff's contention that she can establish age discrimination through direct evidence.

Furthermore, even taking as true that Sinito made these comments on more than one occasion, they still do not rise to the level of direct evidence of discrimination. *See Mastellone v. Publix Super Mkts., Inc.,* 179 F.Supp.3d 784, 797, No. 3:14-CV-433-TAV-HBG, 2016 WL 1328922, at *9 (E.D.Tenn. Apr. 5, 2016) (holding that "[t]he fact that employees mention or ask about retirement is not evidence of age discrimination," and therefore not finding sufficient evidence of discriminatory animus on the part of the supervisor who "frequently asked plaintiff about his retirement plans.").

Third, on July 27, 2022, Sinito sent an email documenting concerns with Plaintiff's performance, considering placing her on a performance improvement plan. This demonstrates that Sinito had well-founded reservations about Plaintiff's abilities and qualifications more than a year before her termination, which was based on the same observations. These concerns were wholly unrelated to age and directly undermine any assertion of discrimination. Finally, Plaintiff herself holds herself out as never having viewed Sinito as discriminatory. To the contrary, she affirmatively testified to how much she loves Frank and even contacted him after her termination. (Plf. Dep. 276:14-18, 274:19-24, JA_2). Plaintiff's testimony further discredits the notion that Sinito's comments were motivated by bias or that they constitute evidence of age discrimination.

### B. Debra Moore Did Not Discriminate Based On Plaintiff's Age.

Plaintiff next attempts to argue that Debra Moore's repeated offers of a severance agreement constitute direct evidence of age discrimination. This contention fails. Even under

Plaintiff's theory, such conduct would require an inference to connect it to her age, which by definition, cannot qualify as direct evidence. In reality, Millennia's decision to extend a severance package was a compassionate gesture—intended as a "soft exit" in recognition of Plaintiff's seven years of service—not a reflection of bias. Millennia had repeatedly documented concerns about Plaintiff's declining performance. Offering her a smoother transition cannot now be weaponized as evidence of discrimination.

Similarly, Plaintiff attempts to seize upon an alleged stray remark attributed to Moore - "At your age, it is time to retire…we all work for Mr. Sinito, and it is time to go." Even assuming for purposes of summary judgment that such a statement was made, it cannot establish age-based animus. At most, the comment reflects Moore's perception of Sinito's role as the ultimate decision-maker, not any discriminatory intent by Moore herself. A non-decisionmaker's alleged remark about what "the boss" has decided does not create an inference that the termination was motivated by age bias. Moreover, the undisputed evidence establishes that Sinito – the decision-maker – acted without discriminatory intent, as detailed in Millennia's memorandum and discussed above. Stray, disputed remarks by others cannot transform a legitimate business decision into unlawful discrimination. *See McCartt v. Kellogg USA, Inc.,* 139 F. Supp. 3d 843, 852 (E.D. Ky. 2015) ("remarks [were] 'stray' because they were temporally and topically distant from the plaintiff's termination").

Plaintiff's theory is further undercut by the undisputed fact that Moore herself was 62 at the time of Plaintiff's termination and remains employed by Millennia today. It strains logic to suggest that Moore was motivated by hostility toward older employees when she was of the same age group and continues to succeed at Millennia. These facts confirm that the alleged remark, even if credited, cannot reasonably support a finding of discriminatory motive or pretext.

4

### C. James Zapf Did Not Discriminate Based On Plaintiff's Age.

Plaintiff alleges James Zapf asked her about her intended retirement in late 2022 to early 2023. However, questions regarding retirement do not constitute direct evidence of discrimination. *See Sander v. Gray Television Grp., Inc.*, 478 F. App'x 256, 265 (6th Cir. 2012) (holding that questions regarding an employee's impending retirement, failed to rebut the employer's non-discriminatory reason for termination). Moreover, Zapf was employed by Millennia for only approximately three months, was terminated before Plaintiff, and had no role in her demotions or ultimate termination. Notably, Zapf was 59 at the time of his termination—himself a member of a protected age class, as were Plaintiff, Moore, and Sinito. Accordingly, his alleged comment provides no basis to support Plaintiff's claims.

### II. Plaintiff Cannot, And Has Waived, Proving Her Case Through Circumstantial Evidence.

As discussed above, Millennia disputes that Plaintiff can establish her claim through direct evidence. In the absence of direct evidence, Plaintiff must proceed under the *McDonnell Douglas* burden-shifting framework.[2] In its Memorandum in Support of Summary Judgment, Millennia demonstrated that Plaintiff cannot meet her burden under this framework because she fails to satisfy the third element of a *prima facie* case—showing that she was qualified for her position. The undisputed record establishes that Plaintiff was not meeting Millennia's legitimate performance expectations at the time of termination.

Rather than address this point, Plaintiff attempts to skip directly to pretext. This is improper. By failing to respond to Millennia's argument regarding the third *prima facie* element, Plaintiff has effectively waived the issue. *See Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 675

---

[2] Plaintiff seeks to avoid application of the *McDonnell Douglas* framework by relying on a single comment from a concurring Supreme Court opinion. *See* Plaintiff's Response in Opp. To Summary Judgment, Doc. # 30, pg. 8. Such reliance is wholly insufficient to disregard binding precedent.

(6th Cir. 2013) (court may grant summary judgment if movant meets its initial burden and nonmovant fails to respond). Millennia has provided ample, undisputed evidence of Plaintiff's deficient performance demonstrating she was not qualified for the purpose of the *prima facie* case. Plaintiff's refusal to confront this evidence is not a defense and therefore her ability to proceed under the *McDonnell Douglas* framework should be deemed waived.

### A. No Basis in Fact

Plaintiff contends that Defendant's performance criticisms were unfounded, in part because some of the issues allegedly fell within Zapf's responsibilities. This argument fails for several reasons.

To start, by attempting to shift responsibility to Zapf, Plaintiff effectively acknowledges the existence of the documented deficiencies, including $2,936 in undeposited items cited in her own brief. Plaintiff cannot credibly attribute these deficiencies to Zapf, who was employed for only approximately three months and was terminated in February 2023—months before Plaintiff was placed on a PIP and ultimately terminated. (Weckerly Dep. 34:14-16, JA_3).

Plaintiff also argues that the PIP was inconsistent with company policy. This is irrelevant. The issue is not whether the PIP mirrored company policy, but whether Plaintiff's performance met the company's expectations. It did not. Plaintiff failed to complete quarterly evaluations as required, and the PIP properly addressed these deficiencies by mandating more frequent property inspections. There is no basis for claiming age discrimination simply because the PIP may have not aligned with internal policies.

Furthermore, Plaintiff's evaluation was not a "sham." Plaintiff is misreading the evaluation, which simply states that Plaintiff's supervisor was Alexandra Thompson, but that Alan Weckerly was the "reviewer" – *i.e.*, the one who completed the review. Additionally, it is not a sign of age

discrimination that Weckerly does not know whether the evaluation was shown to Plaintiff (as argued by Plaintiff) – and regardless of whether it was, the evaluation was his observation of her performance.

## B. Did Not Motivate

Plaintiff mischaracterizes an email from Sinito sent shortly after she received her PIP. That email was prompted by a report from Vice President of Operations Dawn Meyers identifying serious deficiencies at the Jacksonville properties that posed substantial compliance risks to Millennia. In response, Sinito expressed concern about Plaintiff's ability to continue in her role. This was consistent with concerns he had documented for over a year prior to her termination. The fact that he considered demoting Plaintiff to a property manager role or offering her the option to resign underscores the seriousness of her performance issues—it does not suggest that performance was unrelated to her termination.

Additionally, Plaintiff attempts to heavily rely on comments by BJ Everson during the PIP period, but these are mischaracterized. Sinito testified that Everson was terminated due to performance issues. (Sinito Dep. 47:1-5, JA_4), so his perspective on Plaintiff's performance has limited credibility. Moreover, Plaintiff inflates Everson's feedback: for instance, he acknowledged her "efforts" while simultaneously noting deficiencies at the Maple Peak property and encouraging engagement with site staff. For Move-Ins, Everson states that "[E]ach property lost 1-5 tenants in May with a total of 7 move-ins for the portfolio in May. Please let us know what your largest move-in issue is per property, and we will get you the resources." Because each property was losing 1-5 tenants and the entire portfolio lost 7, her move outs were clearly outpacing her move-ins, and Everson was asking how Millennia could help this "move-in issue." Everson's statements, including praise such as "Again, amazing progress across all properties since last update. Very

7

Case 1:24-cv-00248-TRM-MJD   Document 31   Filed 09/15/25   Page 7 of 11   PageID #: 613

much appreciate this, but let's get the remaining Past Due's completed so we are not at risk of losing income…" reflect constructive criticism, not unequivocal approval. And, Everson's inclusion improvement "since last update" does not reflect that she was meeting Millennia's expectations but that she had simply made some improvement. Everson points out that there remain issues with Past Dues and, again, offered her assistance stating, "Are there additional resources you need in order to get al [*sic*] of these completed?" Plaintiff's portrayal of this email as demonstrating that she was performing satisfactorily is a blatant misreading, and even still, any improvement did not negate the broader ongoing performance concerns that had been documented for over a year.

### C. Insufficient to Motivate

Plaintiff contends that six weeks on a PIP was insufficient to address performance concerns. This argument is unavailing. Plaintiff identifies no authority or policy suggesting how long a PIP "should" last. Six weeks provided meaningful opportunity for improvement, yet Plaintiff continued to exhibit deficiencies and generate documented complaints, warranting termination.

Even after the decision to offer Plaintiff a demotion, Millennia continued to receive complaints—including those reported by Thompson—regarding Plaintiff's performance. Thompson received multiple reports from Plaintiff's coworkers, and when considered alongside the Florida property deficiencies, these concerns provided ample justification for termination. Moreover, whether or not Thompson had personally met Plaintiff prior to her termination is immaterial; the decision was not based on Thompson's personal views but on the documented record of performance issues.

As noted above, Plaintiff also misconstrues Everson's emails. Everson merely provided performance updates that included both compliments and criticism. His feedback cannot be read

as evidence that Plaintiff met her PIP objectives. To the contrary, the record shows ongoing deficiencies and failure to meet expectations.

### D. Objective Qualifications

Plaintiff's attempts to compare herself to Adams is misplaced. Unlike Plaintiff, Adams did not exhibit the same volume or severity of performance issues, as evidenced by the fact that she was never placed on a performance improvement plan. By contrast, Plaintiff repeatedly demonstrated over the course of months that she could not meet the requirements of her position.

Millennia was under no obligation to offer Plaintiff a demotion or severance; doing so was a discretionary business decision extended as a courtesy. Plaintiff declined that option, and as performance complaints and business risks continued to mount, termination was the only reasonable course of action.

### III. Plaintiff Fails to Show She Was Terminated "But-For" Her Age.

Conveniently, Plaintiff fails to address the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 177-178 (2009). Under Gross, a plaintiff bringing a claim under the ADEA bears the burden of proving, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action—not merely a motivating factor. (*Id.*). Further, Gross clarifies that, "[u]nlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." (*Id.*) *See also Williams v. Serra Chevrolet Auto., LLC,* 4 F. Supp. 3d 865, 879 (E.D. Mich. 2014). Not only can Plaintiff not meet this burden, for the reasons stated in Defendants original memorandum and above, but she does not even try.

### IV. Witness Credibility is Irrelevant At This Stage.

In a last-ditch effort to salvage her claims, Plaintiff attacks the credibility of Millennia's employees. Such attacks are both prejudicial and improper at the summary judgment stage. Any unrelated lawsuits involving Millennia, or its employees have no relevance to the issues here. Moreover, Plaintiff's newfound attempt to portray Sinito as untruthful and lacking integrity directly contradicts her own testimony, where she affirmatively stated how much she loved Frank. (Plf. Dep. 276:14-18, JA_2).

## CONCLUSION

Because Plaintiff has not created a dispute as to any material fact, Defendant's Motion for Summary Judgment should be granted, and this case must be dismissed with prejudice.

Respectfully submitted,

s/Russell W. Jackson
Russell W. Jackson* TN BPR No. 27322
(*Admitted *Pro Hac Vice*)
Mark E. Stamelos TN BPR No. 021021
**FORDHARRISON LLP**
1715 Aaron Brenner Drive, Suite 200
Memphis, TN 38120
Telephone: (901) 291-1500
Facsimile: (901) 291-1501
Email: rjackson@fordharrison.com
mstamelos@fordharrison.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2025, a true and correct copy of the foregoing has been served via the Court's CM/ECF System upon:

> Harry F. Burnette
> Burnette, Dobson & Pinchak
> 711 Cherry Street
> Chattanooga, TN 37402
> Email: hbunette@bdplawfirm.com
>
> ***ATTORNEY FOR PLAINTIFF***

/s/Russell W. Jackson