UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| GAIL A. GRIFFIN, | ) | |
|---|---|---|
| | ) | Case No. 1:24-cv-248 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Michael J. Dumitru |
| MILLENNIA HOUSING | ) | |
| MANAGEMENT, LLC, and MILLENNIA | ) | |
| HOUSING DEVELOPMENT, LTD., | ) | |
| | ) | |
| *Defendants*. | ) | |

# MEMORANDUM OPINION

Before the Court is Defendants'—Millenia Housing Management, LLC's and Millennia Housing Development, Ltd.'s (collectively "Defendants")—motion for summary judgment (Doc. 28) and Plaintiff Gail Griffin's motion for leave to file sur-reply (Doc. 32). For the reasons stated below, Defendants' motion (Doc. 28) will be **DENIED** and Plaintiff's motion for sur-reply (Doc. 32) will be **DENIED AS MOOT**.

## I. BACKGROUND

### A. Employment History at Millenia Housing/Development

Defendants are a Cleveland-based property management company that manages rental housing. (Doc. 29-1, at 2.) They employed Plaintiff from August 19, 2016, to June 22, 2023. (Doc. 29, at 4, 13; Doc. 30-1, at 40, 99.) Plaintiff began her employment as a Property Manager and was promoted to Senior Property Manager in October 2017. (Doc. 29-2, at 17.) In 2018, Plaintiff was promoted to Regional Manager, and in September 2021, she was again promoted to Regional Property Director. (*Id.* at 17, 19–20.) As Regional Property Director, Plaintiff took on

management of six more properties (in addition to the seven properties she was already responsible for as Regional Manager). (*Id.* at 6, 18, 19; Doc. 29, at 5.) Four of these additional properties were in Jacksonville, Florida, and both Plaintiff and Defendants were aware at the time of her promotion that the Jacksonville properties had existing issues. (Doc. 29-2, at 19; Doc. 29-1, at 13; Doc. 29, at 5.)

During her tenure from 2016 through 2021, Plaintiff received strong performance reviews and feedback from senior leadership, including from Executive Vice President at the time, Alan Weckerly. (Doc. 30-1, at 109–17.) According to Plaintiff, beginning around 2018 or 2019, Chief Executive Officer, Frank Sinito, and Vice President of Human Resources, Debra Moore, began making comments to Plaintiff about retiring. (Doc. 30-1, at 100, 103–04.) Plaintiff averred in 2021, such comments increased; specifically, that Sinito made a comment in 2019 and 2021 about "letting the younger generation take over." (*Id.* at 103–04.) According to Michael Pico, Sinito made these comments in the context of succession planning and explained that Sinito was interested in passing on the company "to his children to run." (*Id.* at 206–07.) Other examples include Plaintiff's supervisor, James Zapf, who Plaintiff claims said to Plaintiff, "[a]ren't you tired of this? Don't you want to go ahead and retire?" and "[a]t our age, we need to, you know, get out of here." (*Id.* at 91–92.) Finally, "a short time before" Plaintiff's termination, Kristi Adams—who worked under Plaintiff at the time—declared that Moore made a comment to Plaintiff during a staff meeting saying, "at your age, it's time to retire" and "[w]e all work for Mr. Sinito and it is time to go."[1] (*Id.* at 214.) Moore denies that she made such comments. (*Id.* at 163.)

---

[1] The record around the date of Moore's alleged statement is imprecise. After reviewing the briefs and the evidence presented by both parties, it appears the date of this meeting was around

### B. Plaintiff's Disciplinary History

Throughout 2022 and 2023, Defendants claim they observed a "significant decline" in Plaintiff's performance, particularly regarding the Jacksonville properties. (Doc. 29-5, at 2.) Around the end of 2022, or early in 2023, following conversations about retirement, Plaintiff claims Zapf informed Plaintiff she was no longer responsible for the Jacksonville properties. (Doc. 30-1, at 83–85, 87–88.) At the time, Plaintiff testified that Sinito told her the reason for this decision was because "[h]e wanted someone in Florida" and that it was "time to pass the baton." (*Id.* at 87–88.) On July 27, 2022, Sinito sent an email to Moore and Weckerly recommending placing Plaintiff on a performance improvement plan ("PIP"). (Doc. 29-1, at 3, 9.) In his email, Sinito stated Plaintiff "definitely needs to be placed on PIP" and that she was "[n]ot doing quarterly's properly! We are losing a TON of $$$." (*Id.* at 9.) However, Defendants decided not to place Plaintiff on a PIP at that time. (*Id.* at 3.) On November 28, 2022, Moore received an email with a screenshot titled "Employees with Timecard Errors" that stated "[j]ust making sure [Plaintiff] is okay. She has been consistently going up in errors over the last few weeks." (*Id.* at 11.) In 2022, Weckerly completed Plaintiff's performance review and determined she had an overall score of "2.75, which indicated 'Needs Improvement.'" (Doc. 29, at 7.)

On May 2, 2023, Moore met with Plaintiff in-person and presented her with the option to either: (1) accept a severance plan or (2) go on a PIP, accept a demotion, and accompanying salary reduction. (*Id.*) Plaintiff accepted the PIP and demotion. (*Id.*; Doc. 30-1.) Plaintiff's PIP

---

May 2, 2023, although Defendants also refer to a comment from Moore in 2019. (*See* Doc. 30–1, at 100; *see also* Doc. 29.) In a signed declaration, Kristi Adams, who was employed by Defendants at the time, declared that she heard Moore make these comments to Plaintiff in a meeting "a short time before [Plaintiff] was terminated." (Doc. 30-1, at 213–14.)

3

document listed the following "Areas of Concern": (1) "Receivables / Financials"; (2) "Occupancy"; (3) "Recertifications (Past Due)"; (4) "Morningside Gardens and Summit Towers"; (5) "Leadership/Decision Making"; and (6) "Payroll Matters / Overtime" as well as accompanying "Action Plan[s]" for each listed concern. (Doc. 29-1, at 3–4.) On May 4, 2023, Vice President of Operations, Dawn Meyers sent an email to Sinito, Weckerly, and Moore stating there were "very serious compliance, [Enterprise Income Verification] and file concerns that exist to some extent at all 4 Jacksonville sites." (*Id.* at 4, 31.) In response, Sinito forwarded that email to Moore and Weckerly stating, "[b]ased on the attached and following our meeting, we need to consider [Plaintiff] not working out her PIP and offering a PM position or just asking her to resign." (*Id.* at 31.)

On May 5, 2023, Plaintiff sent a written response to Moore and Weckerly detailing concerns she had with the PIP and noted when she "accepted the role of RPD that included Jacksonville, the ledgers were horrendous" and that she felt management of the Jacksonville properties had improved significantly during her one year of managing those properties. (Doc. 30-1, at 218–21.) On May 28, 2023, BJ Everson, Director of Asset Management at the time, sent an email to Plaintiff (and copied Sinito, Moore, and Weckerly) telling her there had been "an amazing amount of progress since the prior update in early May" while also listing additional areas of improvement for several categories, including "Collections," "Recertifications," and "Move In." (*Id.* at 177, 201.)

Sometime between May 21, 2023, and June 5, 2023, Defendants once again offered Plaintiff the option to either accept a severance package or accept another demotion to Property Manager, and on June 16, 2023, Plaintiff accepted the demotion. (Doc. 29, at 10; Doc. 29-2, at 23; Doc. 29-6, at 14.) Around this time, Alexandra Thompson, age thirty-nine, who had taken

4

over Plaintiff's responsibilities in Jacksonville, reported additional performance issues and staff complaints she received about Plaintiff. (Doc. 29-1, at 6.) In her declaration, Kristi Adams—who worked under Plaintiff as a project manager—stated that when she first spoke with Thompson, she "said [Plaintiff] had great skills and she was sorry she was fired" but that in a later conversation with Thompson, she "said she wanted to find anything [Plaintiff] had ever done wrong. I told her [Plaintiff] was the best boss I ever had. . . she said others had told her the same thing." (Doc. 30-1, at 215.)

On June 22, 2023—before the second demotion became effective—Defendants terminated Plaintiff's employment. (Doc. 29-6, at 14.) Moore stated that while she had planned to conduct the termination meeting, following a text message from Thompson claiming Plaintiff made a disparaging comment comparing Moore to a movie character, Moore asked Pico to conduct Plaintiff's termination meeting. (Doc. 29, at 12; Doc. 29-1, at 7.)

Plaintiff believes that she was treated unfavorably because of her age, and that she was replaced with individuals younger than her. (Doc. 30-1, at 99–100. ) She states that "the only thing that she could see" was that her replacements were younger than her because she believes she had more experience than her replacements and better management outcomes than her replacements, Adams and Thompson. (*Id.*) At the time of Plaintiff's termination, Defendants employed twenty-three regional managers and directors—only two of those employees were under the age of 40. (Doc. 29-1, at 7.) Plaintiff, age 65, would have been the oldest regional manager or director Defendants employed. (Doc. 30-1, at 184.)

### C. Procedural History

Plaintiff filed this action on June 18, 2024, in the Chancery Court of Hamilton County, Tennessee. (Doc. 1-2, at 2–9.) On July 24, 2024, Defendants removed this action to this Court

pursuant to 28 U.S.C § 1331, 1332(a), and 1442 *et seq.* (Doc. 1, at 1.) Plaintiff asserts claims against Defendants for violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, *et seq.* and the Tennessee Human Rights Act ("THRA"), 29 T.C.A. § 21-101, *et seq.* (Doc. 1-2, at 15.) On August 18, 2025, the Defendants moved for summary judgment. (Doc. 28.) Plaintiff filed her motion for leave to file sur-reply (Doc. 32) on September 19, 2025. These motions are now ripe.

## II. STANDARD OF LAW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the movant has discharged this burden, the nonmoving party can no longer rest upon the allegations in the pleadings; rather, it must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

At summary judgment, the Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably

find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

### III. ANALYSIS

Plaintiff contends that Defendants unlawfully terminated her employment based on her age in violation of the ADEA, 29 U.S.C. § 623, *et seq.*, and the THRA, 29 T.C.A. § 21-101, *et seq.* (Doc. 1-2, at 5.) "The ADEA prohibits an employer from failing or refusing to hire, discharging or discriminating against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting 29 U.S.C. § 623(a)(1)). Courts apply the same analysis to age discrimination claims brought under the ADEA and THRA. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006). Therefore, the analysis below applies to both of Plaintiff's claims of unlawful termination under the ADEA and THRA.

### A. Direct Evidence

To succeed on a claim under the ADEA, the plaintiff must "prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision[;]" it is insufficient "for the plaintiff to show that age was a motivating factor in the adverse action[.]" *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 529 (6th Cir. 2014) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)). The Sixth Circuit has held that when establishing a prima facie case of age discrimination, the "direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove

one or the other, not both." *Id.* at 529 (citation omitted); *see also Wilson v. Firestone Tires & Rubber Co.*, 932 F.2d 510, 514 (6th Cir. 1991).

Here, Plaintiff argues she has established age discrimination via direct evidence based on Sinito's and Moore's alleged repeated statements encouraging her to retire. (*See* Doc. 30, at 9–11.) Defendants argue that Plaintiff has failed to establish a prima facie case via either direct or circumstantial evidence and further deny Sinito or Moore made age-related comments to Plaintiff in connection with their statements about her retirement. (Doc. 29, at 16.)

"A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence." *Geiger*, 579 F.3d at 620. Direct evidence is evidence which, "if believed, requires the conclusion that age was the 'but for' cause of the employment decision." *Scheick*, 766 F.3d at 530. "[G]eneral, vague, or ambiguous comments do not constitute direct evidence of discrimination because such remarks require a factfinder to draw further inferences to support a finding of discriminatory animus." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 708 (6th Cir. 2008); *see also Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004) ("Direct evidence is evidence that proves the existence of a fact without requiring any inferences."). Additionally, only statements made by decisionmakers constitute direct evidence of discrimination. *See Geiger*, 579 F.3d at 621–22 ("Statements by nondecisionmakers, or statements made by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus." (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) (alterations in original)).

Here, Plaintiff contends that several incidents constitute direct evidence of age discrimination. Generally, "questions concerning an employee's retirement plans," standing alone, "do not alone constitute direct evidence of age discrimination." *Lefevers v. GAF*

*Fiberglass Corp.*, 667 F.3d 721, 724 (6th Cir. 2012) (citation omitted); *see also Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1395 (6th Cir. 1993) (explaining suggestions that plaintiff retire that were made outside the termination process were "not alone sufficiently indicative of discrimination" and noting that documentation of termination did not reference the plaintiff's age). However, courts can consider an unambiguous statement as direct evidence if the statement "do[es] not require an inference to conclude that age was the but-for cause of the [adverse action]." *Scheick*, 766 F.3d at 531; *see also Brewer v. New Era, Inc.*, 564 F. App'x 834, 839–40 (6th Cir. 2014) (determining "statements that Plaintiffs were 'too old' and 'needed to retire'" were sufficient to show but-for causation at the summary judgment stage, because the statements were made "just two months before the company terminated Plaintiffs' employment" and because the individual who made the statement "authorized the layoffs" even though he "was not closely involved" in selecting such employees for layoffs); *Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006) (noting while statements made encouraging retirement without reference to age would not constitute direct evidence of age discrimination, statements such as "quit because you're too old" could constitute direct evidence of age discrimination); *Scheick*, 766 F.3d at 531 (determining a statement about "wanting someone younger" was unambiguous direct evidence of age discrimination).

In this case, Plaintiff relies on the declaration of Kristi Adams—an individual that Plaintiff supervised while working for Defendants—that during a meeting both Adams and Plaintiff attended, Moore "was extremely aggressive" and "kept saying to [Plaintiff], '[a]t your age it is time to retire . . . [w]e all work for Mr. Sinito, and it is time to go.'"[2] (Doc. 30-1, at

---

[2] However, the other evidence raised by Plaintiff, (*see, e.g.*, Doc. 30 at 9–10; Doc. 29, at 16) (discussing comments allegedly made by Sinito about "turning the company over to the younger

214.) Adams avers that Moore used the phrase "at your age" several times and stated Plaintiff's "certifications did not matter." (*Id.*) Adams further asserts this meeting was held "a short time before [Plaintiff] was terminated." (*Id.*) When viewed in the light most favorable to Plaintiff, Moore's alleged statement to Plaintiff that "at your age, it is time to retire" constitutes sufficient direct evidence of age discrimination to survive summary judgment. A reasonable jury could find that Moore's comments are not general inquiries or suggestions that Plaintiff retire, but rather discriminatory comments that explicitly invoke Plaintiff's age, similar to "quit because you're too old" or statements about "wanting someone younger."

Additionally, while somewhat unclear, it appears from Adams's declaration that Moore made her age comment during a staff meeting "a short time before [Plaintiff] was terminated."[3] (Doc. 30-1, at 214.) While temporally imprecise, when viewed in the light most favorable to the Plaintiff, a reasonable jury could find that this alleged discriminatory statement was temporally proximate to Plaintiff's termination. *See Brewer*, 564 Fed. Appx. at 839–40 (determining statements made two months before termination were sufficiently proximate to the adverse action).

---

generation" and Moore's and Sinito's alleged repeated comments to Plaintiff that she should "strongly consider retirement")), are not direct evidence of age discrimination, as merely discussing whether an employee should retire does not constitute direct evidence of age discrimination, *see Lefevers*, 667 F.3d at 724, because these statements would require the Court to draw an inference that "turning the company over" referred specifically to Plaintiff's termination, when the context suggests that this statement actually referred to Sinito's children taking over leadership of the company. (*See* Doc. 29, at 16; Doc. 30-1, at 206–07.) Moreover, such comments made in 2019 and 2022 are insufficiently proximate in time to the adverse action in this case, which at the earliest occurred on May 2, 2023, when Plaintiff received the PIP. *See Brewer*, 564 F. App'x at 839 (finding two months between allegedly discriminatory statements and adverse employment action was sufficiently proximate to constitute direct evidence on summary judgment).

[3] *See supra* note 1 and accompanying text.

Finally, although Defendants argue Moore's comment "reflects Moore's perception of Sinito's role as the ultimate decisionmaker," in their brief, Defendants explicitly list Moore as one of the individuals who made the decision to terminate Plaintiff.[4] (Doc. 29, at 21.) As Plaintiff has put forward evidence that Moore—a decisionmaker in the adverse action against her—made an age-related statement "shortly before" such adverse action occurred, Plaintiff has sufficiently shown direct evidence that age was the but-for cause of her termination. Consequently, Plaintiff has satisfied her burden at the summary judgment stage in establishing sufficient evidence on the basis of direct evidence of age discrimination.

**B.      Circumstantial Evidence**

Plaintiff asserts that the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), is inapplicable if she can demonstrate direct evidence of unlawful discrimination. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). The Court agrees, especially given that the Sixth Circuit recently stated that *Gross* overrules the Circuit's ADEA precedent applying Title VII's burden-shifting framework if the plaintiff produces direct evidence of age discrimination.

---

[4] While the Defendants' brief states that Moore was one of "the very individuals who made the decision to terminate Plaintiff," it does not contain a citation to the factual record. However, evidence in the joint appendix shows Moore called and led Plaintiff's PIP meeting and the header on Plaintiff's PIP document is addressed from Moore and Weckerly. (Doc. 29-1, at 13; Doc. 29-2, at 22.) Additionally, Sinito sent his May 6, 2023, email to both Moore and Weckerly stating, "we need to consider [Plaintiff] not working out her PIP and offering a PM position or just asking her to resign." (Doc. 29-1, at 19.) Finally, in his deposition Pico states "Debra Moore, the VP of HR, was handling [Plaintiff's] termination" and Pico received talking points from Moore who had planned on actually terminating Plaintiff herself. (Doc. 29-7, at 4–5.) Consequently, the Court can reasonably infer at this stage that Moore was arguably a decisionmaker in the adverse-employment action against Plaintiff.

*Geiger*, 579 F.3d at 621.[5]

1. **Pretext**

After a plaintiff establishes her prima facia case, "the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007) (citation omitted). Once the defendant has produced a legitimate, nondiscriminatory reason for the adverse action, "the plaintiff then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination." *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 607 (6th Cir. 2019) (citation omitted). Here, the Defendants have put forward sufficient evidence such that a reasonable jury could infer that Defendants had a legitimate, nondiscriminatory reason for demoting and then terminating Plaintiff. Defendants argue they terminated Plaintiff due to "substantial performance issues" and offer documentation of those alleged performance issues as evidence. (*See* Doc. 29; 29-1.) Performance issues are a "legitimate, nondiscriminatory reason for terminating" employment. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 546 (6th Cir. 2008). Thus, the burden

---

[5] However, the Court finds that, even if Plaintiff's claims only amount to circumstantial—rather than direct—evidence, the Plaintiff still sufficiently establishes that a reasonable jury could find she has established a prima facie case using circumstantial evidence. *See McDonnell Douglas Corp.*, 411 U.S. at 622 (explaining that the plaintiff establishes a prima facie case of age discrimination by proffering evidence that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position held; and (4) she was replaced by someone outside of the protected class). Here, Plaintiff has presented sufficient evidence that she is a member of the protected class (as she is above the age of 40), she was placed on PIP and terminated (adverse employment action), she was replaced by someone outside of the protected class (Thompson was 39 when she replaced Plaintiff), and that she was qualified for the position held at the time of her termination (she had been successful as a Regional Manager and Property Manager in the past). Nevertheless, regardless of whether Moore's statements constitute direct or circumstantial evidence, the Court has determined Defendants sufficiently established a legitimate nondiscriminatory reason for demoting and terminating Plaintiff. Therefore, the analysis regarding Plaintiff's claim of pretext is analyzed *infra*.

shifts to Plaintiff to show existence of a genuine issue of material fact that Defendants' reasoning is pretext for discrimination. *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) (citation omitted).

Pretext can be shown "by proving (1) that the proffered reason ha[s] no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [her discharge], or (3) that they were insufficient to motivate discharge." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012). However, once a prima facie case is established, the Sixth Circuit has cautioned against "rigid application of these three criteria" at the summary judgment stage, because "an employer's true motivations are particularly difficult to ascertain, thereby frequently making such factual determinations unsuitable for disposition at the summary judgment stage." *Moffat v. Wal-Mart Stores, Inc.*, 624 F. App'x 341, 348–49 (6th Cir. 2015) (noting the question courts should ask at summary judgment "is a commonsense one: 'Did the employer fire the employee for the stated reason or not?'" (quoting *Blizzard*, 698 F.3d at 285). Nevertheless, "mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002) (citation modified). "At the summary-judgment stage, the plaintiff need only rebut the employer's proffered rationales to carry her burden; she need not disprove them." *Moffat*, 624 F. App'x at 348 (citing *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012)). A plaintiff may show an adverse employment determination was not based in fact if the determination did not comport with company policy. *See id.* at 348–49 (explaining because a defendant's decision-making process did not comport with the company's investigation policy, a reasonable jury could determine plaintiff's alleged misconduct was not the real reason for discharging the plaintiff).

Here, Plaintiff points to the fact that her replacement, Thompson, was thirty-nine at the time of Plaintiff's termination, and therefore is just outside of her protected class. (Doc. 30-1.) Plaintiff also notes that certain issues such as collectables and undeposited checks were "misattributed" to her because the Jacksonville portfolio was reassigned to Zapf in 2023, which is supported by Adams's declaration. (Doc. 30, at 15; *see also* Doc. 30-1, at 213.) Additionally, Plaintiff notes that certain requirements in her PIP document were not consistent with company policy, such as the PIP's "100% quarterly" inspection requirement. (Doc. 30, at 15–16.) Moreover, not only did Plaintiff file a written statement a few days after receiving the PIP document, objecting to the contents, (*see* Doc. 30-1, at 218 –21), but she also points to Moore's deposition stating that there were errors in her 2022 performance review calculation, allegedly in violation of the instructions for scoring performance reviews (*see* Doc. 30-1, at 168). As Defendants relied on these performance metrics and the PIP document to argue they made a legitimate nondiscriminatory decision to terminate Plaintiff, these errors in policy indicate that Defendants had no basis in fact for terminating Plaintiff. Finally, Plaintiff also offers the email from Everson on May 28, 2023, to show that she had made progress during her PIP. (Doc. 30-1, at 201.) Defendants argue that reliance on this email is misplaced in part because Everson was terminated due to performance issues. (Doc. 29-4.) However, issues of credibility should be determined by the jury and are inappropriate at the summary judgment stage. *See Anderson*, 477 U.S. at 255. Taken together, Plaintiff has put forward enough evidence to suggest a jury could reasonably find Defendants' decision to terminate her was discriminatory.

IV. **CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment (Doc. 29) is **DENIED**. Plaintiff's motion for sur-reply (Doc. 32) is also **DENIED AS MOOT**.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH
UNITED STATES DISTRICT JUDGE**